**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



APPELLANT PRO SE:

**HAROLD HELLUMS**
Michigan City, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

HAROLD HELLUMS,                              )
                                 )
    Appellant-Petitioner,                   )
                                 )
         vs.                                  )    No. 14A01-1402-PC-67
                                 )
STATE OF INDIANA,                            )
                                 )
    Appellee-Respondent.                    )

APPEAL FROM THE DAVIESS SUPERIOR COURT
The Honorable W. Timothy Crowley, Special Judge
Cause No. 14D01-0208-PC-744

**November 6, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Petitioner, Harold Hellums (Hellums), appeals the post-conviction court's denial of his petition for post-conviction relief.

We affirm.

## ISSUE

Hellums raises one issue on appeal, which we restate as follows: Whether Hellums received ineffective assistance of counsel.

## FACTS AND PROCEDURAL HISTORY

We adopt this court's statement of facts as set forth in our opinion issued in Hellums' direct appeal, *Hellums v. State*, 758 N.E.2d 1027, 1028 (Ind. Ct. App. 2001):

> On or around March 17, 1999, Hellums and others were in a camper that was parked outside a home. A strong odor of ether was emanating from the camper. When the police searched the camper and home, they found methamphetamine, a liquid containing ephedrine or pseudoephedrine, Sudafed capsules, two empty pseudoephedrine-pill bottles, ether, empty denatured alcohol cans, scales, syringes, a spoon, and receipts for pseudoephedrine and batteries.

On April 8, 1999, the State filed an Information, charging Hellums with Count I, dealing in a controlled substance (methamphetamine), a Class B felony; Count II, maintaining a common nuisance, a Class D felony; Count III, possession of a controlled substance, a Class D felony; and Count IV, possession of paraphernalia, a Class A misdemeanor. The State later amended these charges by adding an habitual offender Count.

On April 16, 1999, Attorney Tim Dant (Attorney Dant) was appointed as counsel. On September 10, 1999, Attorney Dant filed a motion to withdraw as Hellums' counsel,

2

which was granted by the trial court. Five days later, on September 15, 1999, Attorney Dant, sitting as Judge *Pro Tempore*, granted the State's Motion on the Habitual Offender Enhancement and set the matter for an initial hearing. On October 12, 1999, Attorney J.D. Dwyer (Attorney Dwyer) was appointed but he withdrew on March 23, 2000, due to illness. Thereafter, on April 17, 2000, Attorney Christopher Ramsey (Attorney Ramsey) was appointed to represent Hellums.

On February 23, 2001, a jury trial commenced. At the close of the evidence, the jury found Hellums guilty of attempting to deal a Schedule II controlled substance (methamphetamine), maintaining a common nuisance, and possession of paraphernalia. Three days later, the jury found Hellums to be an habitual offender. On March 19, 2001, the trial court sentenced him to the Indiana Department of Correction for twenty years for the attempting to deal conviction, three years for maintaining a common nuisance, and one year for the possession of paraphernalia, with the sentences to run consecutively. The trial court enhanced the sentence for the attempt charge by thirty years based on Hellums' adjudication as an habitual offender. In aggregate, Hellums received a fifty-four-year sentence.

On August 28, 2001, Hellums filed a direct appeal. On appeal, Hellums argued that the doctrine of amelioration required the trial court to sentence him for a Class D felony rather than a Class B felony. *Hellums*, 758 N.E.2d at 1028. We disagreed and affirmed the trial court. *Id.* at 1029. Hellums did not seek transfer.

On August 28, 2002, Hellums filed a petition for post-conviction relief. On October 10, 2003, an attorney was appointed to represent him, but his counsel withdrew

3

her appearance on January 14, 2010. On July 26, 2010, Hellums filed a motion for appointment of counsel, which was denied by the post-conviction court. On November 14, 2013, the post-conviction court conducted a hearing on Hellums' petition. On January 28, 2014, the post-conviction court found that Hellums had received effective assistance of counsel and denied his petition.

Hellums now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

Under the rules of post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1, § 5; *Strowmatt v. State*, 779 N.E.2d 971, 974-75 (Ind. Ct. App. 2002). To succeed on appeal from the denial of relief, the post-conviction petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id*. at 975. The purpose of post-conviction relief is not to provide a substitute for direct appeal, but to provide a means for raising issues not known or available to the defendant at the time of the original appeal. *Id*. If an issue was available on direct appeal but not litigated, it is waived. *Id*.

### II. *Ineffective Assistance of Counsel*

Hellums contends that he was denied the effective assistance of both trial and appellate counsel. The standard by which we review claims of ineffective assistance of counsel is well established. In order to prevail on a claim of this nature, a defendant must satisfy a two-pronged test, showing that: (1) his counsel's performance fell below an

4

objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Johnson v. State*, 832 N.E.2d 985, 996 (Ind. Ct. App. 2005), *trans. denied* (citing *Strickland v. Washington*, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied*). The two prongs of the *Strickland* test are separate and independent inquiries. *Johnson*, 832 N.E.2d at 996. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Timberlake*, *v. State*, 753 N.E.2d 591, 603 (Ind. 2001), *reh'g denied, cert. denied*, 537 U.S. 839 (2002) (quoting *Strickland*, 466 U.S. at 697).

Counsel is afforded considerable discretion in choosing strategy and tactics and we will accord those decisions deference. *Timberlake*, 753 N.E.2d at 603. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. *Id*. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id*. Furthermore, we will not speculate as to what may or may not have been advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best. *Johnson*, 832 N.E.2d at 997.

A. *Trial Counsel*

Hellums argues that he received ineffective assistance of the various trial counsels that represented him during the trial court's proceedings. We will address the representation of each counsel separately. However, it should be noted that our review is frustrated by Hellums' neglect to provide a record adequate for review. On appeal from the denial of a petition for post-conviction relief, the burden is on the petitioner to provide a record adequate to facilitate intelligent appellate review. *See Lile v. State*, 671 N.E.2d 1190, 1193 (Ind. Ct. App. 1996). "Failure to do so has been found to be grounds for waiver of any alleged error based upon the absent material." *Cox v. State*, 475 N.E.2d 664, 667 (Ind. 1985). Nevertheless, during the post-conviction hearing, Hellums read snippets of the trial record into the post-conviction hearing transcript. Because some scant evidence is available for review, we decline to find Hellums' argument waived even though his failure to include the trial transcript has impeded our review.

## A. *Attorney Dant*

Hellums first complains that Attorney Dant failed to conduct any meaningful pretrial investigation, failed to interview crucial defense witnesses, failed to communicate, and failed to file a speedy trial motion. However, despite these very generalized statements, Hellums neglected to establish detailed instances where his counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms and where there was a reasonable probability that, but for Attorney Dant's errors, the result of the proceeding would have been different. *See Johnson*, 832 N.E.2d at 996.

6

Hellums also contends that Attorney Dant failed to timely file a notice of alibi. During the post-conviction proceedings, Attorney Dant testified that he did not have any independent recollection as to why he did not file a notice of alibi. He clarified that it is normal procedure for him to file the notice if he believed it to be helpful to the case. As the State points out, and we agree, "it is difficult to imagine how a notice of alibi could have helped" Hellums. (Appellee's Br. p. 10). On direct appeal, the evidence showed that Hellums and other individuals were caught red-handed in a camper parked outside a home, from which a strong odor of ether emanated and in which methamphetamine was located.

More serious is Hellums' allegation that Attorney Dant acted as judge *pro tempore* a mere five days after he withdrew his representation. In this temporary position, Attorney Dant signed the order granting the State's Motion on the Habitual Enhancement. However, as ineffective assistance of counsel refers to the quality of an attorney's representation of a client, it logically follows that the conduct of the attorney after representation has ended is not covered by this doctrine. Rather, Hellums' allegation is more properly characterized as a conflict of interest between Attorney Dant's duties as Hellums' counsel and his obligations as a judge *pro tempore*.

We observe that a judge *pro tempore* is bound by Canon 3 of the Indiana Code of Judicial Conduct. The Code of Judicial Conduct and the canons thereunder are intended to establish standards for the ethical conduct of judges, the violation of which may result in disciplinary proceedings. *Kizer v. Davis*, 369 N.E.2d 439, 443 (Ind. 1977). They do not have the force and effect of case law. *Id*. Under the language of Canon 3(E)(1),

7

"[a]judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned . . ." This includes, but is not limited to, instances where "(b) the judge served as a lawyer in the matter in controversy[.]" Ind. Judicial Conduct R. 3(E)(1).

Attorney Dant explained that he only served as judge *pro tempore* in Hellums' case for one day and, with respect to the granting of the State's motion, he testified that at the end of the day, "you get a stack of papers to sign and that very well may have been one of those documents that I would have signed. You know, I have no way of denying it. I just don't recall." (Transcript p. 10). While it is uncontroverted that a conflict of interest existed, this issue was available to be raised on direct appeal. Post-conviction relief is a process for raising issues unknown at trial or not available at trial. *Tope v. State*, 477 N.E.2d 873, 874 (Ind. Ct. App. 1985), *reh'g denied*. It is well established that a petition for post-conviction relief cannot include an issue which was or could have been raised in the original trial. *Id*. To the extent Hellums now raises an issue that was available on direct appeal, he has waived his claim for appellate review. *See id*.

### B. *Attorney Dwyer*

Next, Hellums contends that Attorney Dwyer ineffectively represented him by not filing any motions, interviewing Hellums or any witnesses, and conducting depositions. Again, generalized statements without any particularized instances of alleged ineffectiveness, with appropriate references to the record, fails to satisfy the showing that Attorney Dwyer's performance fell below an objective standard of reasonableness. *See Johnson*, 832 N.E.2d at 996.

## C. *Attorney Ramsey*

Turning to the attorney that represented him during trial, Hellums contends that Attorney Ramsey failed to conduct a professional investigation, failed to communicate with him, failed to investigate and produce defense and alibi witnesses at trial, and failed to depose state witnesses.

A review of the morsels of the trial court's proceedings read into the post-conviction transcript by Hellums reveals a different picture. Attorney Ramsey unsuccessfully objected and requested a mistrial when the State added the attempted dealing in methamphetamine charge on the second day of trial. Likewise, Attorney Ramsey objected to the jury instruction related to this added attempt charge. He also unsuccessfully requested more time to prepare a defense on those grounds. Attorney Ramsey objected to the habitual offender charge and filed a notice of alibi. He objected to a witness' testimony as being in violation of an order *in limine*. According to Hellums' count, Attorney Ramsey objected fifty-seven times at various points during the trial, all of which were overruled. During the post-conviction proceedings, Attorney Ramsey testified that he was prepared to try the case even though the initial charges did not include the attempt charge.[1]

Based on the limited record before us, it is clear that Attorney Ramsey was prepared for trial and performed effectively. Merely because Hellums did not agree with

---

[1] Hellums also contends that "[t]here was no material evidence presented at trial of any affirmative action by Hellums that could be construed as an attempt to manufacture or deal in illegal drugs." (Appellant's Br. p. 16). In so far as this is a sufficiency of the evidence claim, we note that Hellums' argument is waived as this claim was available to be raised on direct appeal. *See Tope*, 477 N.E.2d at 874.

Attorney Ramsey's efforts and strategy, this disagreement does not raise to an ineffective assistance of counsel issue. We reiterate that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. *See Timberlake*, 753 N.E.2d at 603. As counsel is afforded considerable discretion in choosing strategy and tactics, so we accord deference to Attorney Ramsey's decisions. We affirm the post-conviction court's decision.

B. *Appellate Counsel*

Next, Hellums contends that his appellate counsel rendered ineffective assistance. Specifically, he maintains that appellate counsel raised an issue without merit on appeal, while the issue with merit—Attorney Dant's conflict of interest—was not raised.

The standard by which we review claims of ineffective assistance of appellate counsel is the same standard applicable to claims of trial counsel ineffectiveness. *Wright v. State*, 881 N.E.2d 1018, 1022 (Ind. Ct. App. 2008), *reh'g denied, trans. denied*. Our supreme court identified three categories of appellate counsel ineffectiveness claims, including: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Bieghler v. State*, 690 N.E.2d 188, 193-95, *reh'g denied, cert. denied*, 525 U.S. 1021 (1998). In evaluating these claims, we use the following two part test: (1) whether the unraised issues are significant and obvious from the face of the record; and (2) whether the unraised issues are clearly stronger than the raised issues. *Id.* at 194. Otherwise stated, to prevail on a claim of ineffective assistance of appellate counsel, a defendant must show from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant

10

and obvious issue and that this failure cannot be explained by any reasonable strategy. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 260-61 (Ind. 2000), *reh'g denied, cert. denied*, 534 U.S. 1164 (2002).

On appeal, appellate counsel presented the doctrine of amelioration as a way to sentence Hellums to a Class D felony for possession of chemical reagents, rather than the Class B felony for attempting to deal methamphetamine. On April 8, 1999, Hellums was charged, among other things, with dealing in methamphetamine, as a Class B felony. On July 1, 1999, a new statute criminalized the "possession of chemical reagents or precursors with intent to manufacture controlled substances." *See* I.C. § 35-48-4-14.5. In essence, the doctrine of amelioration allows a defendant, who is sentenced after the effective date of a statute that provides for a more lenient sentencing, to take advantage of the more lenient statute rather than be sentenced under the more harsh statute that was in effect when the defendant was charged or convicted. *Hellums*, 758 N.E.2d at 1028-29. Hellums' appellate counsel argued that Hellums should have been sentenced under the new statute because the "General Assembly effectively reduced the penalty for what Hellums was convicted of doing." *Id*. at 1028. Raising an issue of first impression, appellate counsel required us to engage in statutory interpretation and investigate the language of the Senate Enrolled Act. Because we concluded that the new statute did not intend to reduce the penalty for the attempt to deal charge, but rather signaled the creation of a new crime, the statute could not be construed as an ameliorative amendment for the purpose of Hellums' sentencing. *Id*. at 1029. Even if we did not analyze the issue on

11

direct appeal as Hellums suggested, we conclude that appellate counsel raised a valid and appropriate argument. *See Bieghler*, 690 N.E.2d at 194.

Turning to the issue of Attorney Dant's conflict of interest when presiding as judge *pro tempore* for one day after his representation of Hellums ended, we note that our review is hindered by the lack of the trial court's transcript. It is uncontroverted that pursuant to Indiana Judicial Cannon 3(E)(1), Attorney Dant should have disqualified himself, as "[i]t is fundamental that one who has been an attorney for a litigant should not thereafter act as judge in any part of the same controversy." *Tokash v. State*, 115 N.E.2d 745, 746 (Ind. 1953). However, Hellums fails to establish—nor can we glean from the record—the exact circumstances in which Attorney Dant ruled on the State's habitual offender motion and whether that ruling was independently affirmed by the trial court. Furthermore, even without this additional information, Hellums' claim must fail as he did not demonstrate that, in the absence of this perceived ineffectiveness, the outcome of this case would have been different. *Johnson*, 832 N.E.2d at 996. As a result, we affirm the post-conviction court's denial of Hellums' petition for relief.

### CONCLUSION

Based on the foregoing, we conclude that Hellums received effective assistance of counsel.

Affirmed.

MATHIAS, J. and CRONE, J. concur